UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JAMES MALCOM MCDONALD

                              Plaintiff,

v.                                           Case No. 18-cv-123-pp

DENISE GILANYI, *et al.*,

                              Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (DKT NOS. 65, 78), AND DISMISSING CASE**

---

On January 24, 2018, the plaintiff, representing himself, filed this lawsuit under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. Dkt. No. 1. The court issued a screening order allowing the plaintiff to proceed on an Eighth Amendment deliberate indifference to medical needs claim against the defendants. Dkt. No. 8. The defendants filed motions for summary judgment, with Dr. Durrani filing separately from Denise Gilanyi, Samantha Keeku, and Rebecca Swenson. Dkt. Nos. 65, 78. The court grants the defendants' motions for summary judgment and dismisses the case.

**I.    RELEVANT FACTS**

    A.    <u>The Parties</u>

At the time of the events described in the complaint, the plaintiff was an inmate at the Kenosha County Jail and Kenosha County Detention Center ("the jail"). Dkt. No. 67 at ¶3. Defendants Denise Gilanyi, Samantha Keeku and

Rebecca Swenson are nurses employed by the jail ("nurse defendants"). Id. Defendant Dr. Durrani is a medical doctor who provided services to inmates at the jail during the relevant period. Dkt. No. 96 at ¶8.[1]

    B.    <u>Allegations Related to Exhaustion of Administrative Remedies</u>

The nurse defendants have moved for summary judgment on the basis that the plaintiff failed to exhaust his administrative remedies. Dkt. No. 66. While Dr. Durrani did not join this motion, instead filing a motion for summary judgment on the merits, the court notes that he did assert failure to exhaust as an affirmative defense in his answer. Dkt. No. 55 at 3. Because Durrani was acting under the color of state law, given that he is a physician contracted by Kenosha County, and Kenosha County delegated its obligation to provide medical services to inmates to him, the court will analyze the entire case as an exhaustion of administrative remedies case and apply that analysis to all defendants. See <u>Childs v. Tsai</u>, No. 11-C-194, 2012 WL 2525648 at *4 (E.D.

---

[1] Dr. Durrani failed to submit Proposed Findings of Facts with his Brief in Support of his Motion for Summary Judgment, dkt. no. 79, as required by Civil Local Rule 56(b)(1)(B). On April 27, 2020 the court's clerk notified the lawyer for Dr. Durrani of this failure, and Dr. Durrani's lawyer filed the Proposed Findings of Fact the same day. Dkt. No. 96. The court recognizes that the plaintiff did not have an opportunity to respond to Dr. Durrani's Proposed Findings of Fact. However, because the court finds, as described below, that the plaintiff failed to exhaust his administrative remedies and dismisses on those grounds, the plaintiff does not need to respond to Dr. Durrani's Proposed Findings of Fact, which focus solely on the merits of the plaintiff's substantive claims and do not contain information related to exhaustion of administrative remedies. The court has used Dr. Durrani's Proposed Findings of Fact only to the extent that they provide background information or context to the factual allegations that the court deems undisputed, which it has the discretion to do under Fed. R. Civ. P. 56(e).

Wis. June 29, 2012) (quoting West v. Atkins, 487 U.S. 42, 57 (1998) ("[W]hen a physician is employed by the state to provide medical services to state prison inmates, that physician acts under the color of state law for purposes of section 1983.")). The court has considered only the facts that are relevant to decide whether the plaintiff exhausted his administrative remedies.

The court allowed the plaintiff to proceed on an Eighth Amendment deliberate indifference to medical needs claim against all defendants because he alleged that between August 23, 2017 and March 9, 2018, they failed to adequately address his repeated complaints of sneezing, itching and sinus issues and because they refused to replace parts for or sanitize his CPAP machine. Dkt. No. 8 at 4. The complaint included allegations that the defendants denied the plaintiff an appointment with an outside doctor to address his sinus issues and that the plaintiff had to buy medication from the commissary. Dkt No. 1 at 2-3. Regarding his CPAP machine, the plaintiff specifically alleged, "I have also sought to get replacement equipment for my CPAP equipment that should be replaced, sanitized, and such where for the past 7 months I have respectfully asked to receive the replacement for the CPAP machine that I brought to the jail as I am indigent and unable to pay for these." Id.

The defendants state that the plaintiff failed to exhaust his administrative remedies because he either did not file a grievance related to these issues or failed to appeal denied grievances as required by the jail's

procedures. Dkt. No. 66 at 11. During this period, the plaintiff filed at least five inmate grievances using the jail's grievance system. Dkt. No. 67 at ¶12.

### 1. *Kenosha County Jail's Inmate Grievance System*

The parties do not dispute the specifics of the jail's inmate grievance system. Dkt. No. 90 at ¶¶8-11. The parties also do not dispute that jail staff provided the plaintiff with a copy of the Inmate/Detainee Handbook and that the plaintiff was aware of the inmate grievance procedures. Id. at ¶7.

The handbook contains the jail's grievance process. Dkt. No. 67 at ¶3; Dkt. No. 68-1. An inmate who has a grievance must submit his complaint in writing on the Inmate Grievance/Appeal Form within seven days of the incident occurring. Dkt. No. 68-1 at 11. Jail staff must determine the legitimacy of the complaint and provide a response or resolution within seven days of receipt. Id. at 12. If the inmate disagrees with the decision, he must use another Inmate Grievance/Appeal Form and at the top of the form check the "appeal" box. Id. The inmate must include the reason he disagrees with the decision and submit the appeal either to a supervisor "or via other means (drop box or via Supervision) to ensure complete access to appeals/administrative remedies." Id. The inmate should submit the appeal within seventy-two hours after receiving the decision. Id.

### 2. *August 27, 2017 Grievance*

The parties do not dispute that on August 27, 2017, the plaintiff filed a grievance complaining about "inappropriate comments made by staff." Dkt. No.

4

90 at ¶12(a); Dkt. 68-9 at 2. In the grievance, the plaintiff complained that "Mr. Guadalupe" (not a defendant) was passing out medications and said to him "welcome back!" Dkt. 68-9 at 2. The plaintiff stated in the grievance that he "was really offended at this comment and mannerism." Id. at 3. He further wrote that he wished he could receive an "apology from Mr. Guadalupe, but instead would appreciate if he would be reprimanded by whatever remedy is provided." Id. Jail staff marked the grievance "Not Sustained," and the reply stated that "an internal investigation will be conducted." Id. at 1. The plaintiff does not dispute that he did not appeal this grievance. Dkt. No. 90 at ¶12(a).

### 3. *September 15, 2017 Grievance*

There is no dispute that on September 15, 2017, the plaintiff filed a grievance complaining that jail medical staff would not supply him with distilled water for his CPAP machine and would not give him the non-prescription medicine he brought with him to the jail. Dkt. No. 90 at ¶12(b); Dkt. No. 68-10. The plaintiff noted that jail staff placed him "in the medical unit to be able to use my CPAP machine for CPAP therapy when I sleep." Dkt. No. 68-10 at 2. He explained that his machine required distilled water but that "the medical department informed me that they will not provide distilled water." Id. at 3. He further complained about the jail's policy to not allow him the one-month supply of medication he brought with him, instead making him pay for that medication. Id.

Jail staff labeled the grievance "exonerated," explaining that per jail

5

policy, they could not provide distilled water nor could they allow the plaintiff to have personal medications. Id. at 1. The plaintiff does not dispute that he did not appeal this disposition. Dkt. No. 90 at ¶12(b).

### 4. *December 7, 2017 Grievance*

The plaintiff does not dispute that he filed another grievance on December 7, 2017, this time related to denial of medical services. Dkt. No. 90 at ¶12(c); Dkt. No. 68-8. He complained that he wrote "a sick call request to the medical department" requesting to be seen for knee issues and "problems with my sinuses." Dkt. No. 68-8 at 2. The crux of his complaint was that "it is now 6 days later and the other inmates who filled out a sick call request on December 1 have been seen 3 days ago." Id. He further stated,

> I also feel as if there is some prejudice going on with someone in the medical department because of my writing previously another grievance on a nurse and was moved then from medical 1 to medical 2, and was once again in the process of being moved to segregation on 12/5 @ 6 pm by medical staff which I believe was for a grievance I wrote on Ms. Samantha concerning the way she showed no concern for the sinus issue that I still have, as well as the unprofessional way that she spoke to me. I would like to mention that I wrote that grievance almost 3 weeks ago where I handed it to deputy Spakes, yet I've still received no response.

Id. at 3.

A jail staff member by the name of "May" denied the grievance as "unfounded," noting that the plaintiff had been seen for these issues "on more than one occasion." Id. at 4. May also stated that the plaintiff was "still scheduled for an upcoming sick call to follow up on your chronic care medical conditions." Id. May noted the plaintiff's concern that there was a missing

6

grievance and informed him "that there is no record of a prior grievance regarding the staff conduct in my records or the records of Jail Administration." Id. The plaintiff does not dispute that he did not appeal this denial. Dkt. No. 90 at ¶12(c).

     5.    *January 23, 2018 Grievance*

Neither party disputes that the plaintiff filed a grievance about his missing CPAP bag on January 23, 2018. Dkt. No. 90 at ¶12(d); Dkt. No. 68-7. Neither party disputes that that the plaintiff appealed this grievance. Id. The plaintiff originally complained that after a medical appointment, "deputy Nate" walked him back to his dorm. Dkt. No. 68-7 at 2. When the plaintiff stopped to grab his CPAP machine, the bag he used to store his CPAP machine in was missing. Id. He complained that he had no way to store his "new tubing and filters." Id. at 3.

Jail staff marked the grievance as "Not Sustained," explaining that after an extensive investigation, including reviewing video footage and other documentation, there was no evidence that the plaintiff had a CPAP bag with him. Dkt. No. 68-7. The response also informed the plaintiff that he had "the option of filing a claim with the county if you feel you have experienced a financial loss." Id.

The plaintiff appealed this response, arguing that camera footage from August 23, 2017 showed that he arrived at the jail with a CPAP bag. Id. at 5. He also stated that the property release sheet from "Douglass County,

7

Nebraska" indicated that he left that facility with a CPAP bag. Id. Again, jail staff denied the appeal because they could not find evidence that the CPAP bag went missing and because the documentation the plaintiff referred to no longer existed on the system. Id. at 7.

      6.    *February 2, 2018 Grievance*

Neither party disputes that the plaintiff filed a grievance related to jail staff opening legal mail on February 2, 2018. Dkt. No. 90 at ¶12(e); Dkt. No. 68-6. The plaintiff complained that he found legal mail addressed to him on the floor, and it was clear it had been opened. Dkt. No. 68-6 at 2-3. Jail staff denied the complaint as "Unfounded," noting that the staff member at issue stated that she gave the plaintiff his mail, he acknowledged her presence, and she placed the mail on his bunk. Id. at 1. It is undisputed that the plaintiff did not appeal this response. Dkt. No. 90 at ¶12(e).

      7.    *Plaintiff's Allegations of Lost Grievances*

The plaintiff does not dispute the existence of these five grievances nor does he dispute that he failed to appeal all but the January 23, 2018 grievance. Dkt. No. 90 at ¶12. Rather, he alleges he filed additional grievances but admits he has no record of them. Id. He states he filed a grievance with the medical department complaining about defendant Samantha Keeku, but it got lost or the staff failed to file it. Id. As proof of that the grievance existed, he points to his December 7, 2017 grievance where he mentioned that he believed he was being retaliated against for filing a grievance against Keeku but then also noted

8

that he hadn't received a response to that grievance. Id., Dkt. No. 68-8. He highlights the fact that the staff member who responded to the December 7 grievance stated that there was no record of the previous grievance. Id.

The plaintiff further alleges that he often has had his documents mishandled by jail staff, which he states explains why his grievances went missing. As proof, he points to his February 2, 2018 grievance regarding the open legal mail found on the floor. Dkt. No. 90 at ¶12; Dkt. No. 68-6. The plaintiff states, "The Kenosha County Jail does have a grievance process that I used, but the fact is that I submitted more than five alleged grievances to the administration and on more than one occasion the grievances were somehow unable to be heard for reasons that I cannot explain." Dkt. No. 90 at ¶12. Other than the two examples from already existing grievances mentioned above, the plaintiff does not provide any details regarding other grievances he allegedly filed.

## II. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive

9

law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

    B.    Exhaustion of Administrative Remedies

        1.    *Exhaustion Standard*

The Prison Litigation Reform Act provides in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court, and it produces a "useful administrative record" for the district court to rely on. See Jones v. Bock, 549 U.S. 199, 204 (2007) (citing Woodford v. Ngo, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency, because claims generally are resolved more quickly by an agency than through litigation in federal court. Woodford, 548 U.S. at 89.

The Seventh Circuit "has taken a strict compliance approach to exhaustion." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court." Id. "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). "It is well established that 'a suit filed by a prisoner before

10

administrative remedies have been exhausted must be dismissed . . . [and] the district court lacks discretion to resolve the claim on the merits.'" Barnes v. Briley, 420 F.3d 673, 676 (7th Cir. 2005) (quoting Perez v. Wis. Dept. of Corr., 182 F.3d 532, 535 (7th Cir. 1999)).

2. *Analysis*

The jail has a detailed procedure in its inmate handbook explaining what inmates must do to address their grievances. Dkt. No. 68-1 at 11-12. While there is a limited exception to the exhaustion requirement where "dead end" procedures or extremely "opaque" procedures render the grievance process unavailable, see Ross v. Blake, 136 St. C. 1850, 1859 (2016), the process at issue here is straightforward. The inmate must file a written grievance within seven days of an incident occurring, jail staff must respond within seven days of receipt and if an inmate disagrees, he can appeal in writing within seventy-two hours of receiving the decision. Dkt. No. 68-1 at 11-12.

By his own admission, the plaintiff was familiar with the jail's grievance procedures, including the requirement that he appeal any dispositions with which he disagreed. Dkt. No. 90 at ¶7. Yet he argues that the process was unavailable to him. While the plaintiff does not dispute any material facts related to the five grievances the defendants presented, he states that he attempted to file other grievances that show he exhausted his administrative remedies in this case. Dkt. No. 90 at ¶12.  He says that these grievances were "somehow unable to be heard for reasons that I cannot explain." Id.

11

The above statement is the only evidence the plaintiff submitted to show that he submitted grievances that went missing. He does not provide details about these allegedly missing grievances; he does not describe the nature of the complaints, who the complaints were made against, to whom he submitted the complaints, and when he submitted them—save for one instance. The plaintiff points to the December 7, 2017 grievance where, in the body of the grievance, he inquires about the status of a grievance he wrote against Samantha Keeku for ignoring his sinus issue. Dkt. No. 68-8 at 3. The jail staff member who responded to his complaint, May, explicitly stated that the jail had no record of the grievance against Keeku. Id. at 4. The reference in the December 7, 2017 grievance does not demonstrate that the grievance process was unavailable to the plaintiff and it does not prove that he filed an earlier grievance, he did not refile the grievance against Keeku and did not file a grievance complaining about the missing grievance.

The only other evidence the plaintiff presents is his February 2, 2018 grievance complaining that jail staff was tampering with his mail. He attempts to connect this incident to the larger premise that jail staff was tampering with his grievances as well. There is no evidence to support this conclusion. The incident of which the plaintiff complained did not involve staff *stealing* or *losing* the plaintiff's mail. He complained only that someone had opened it. Even if this was true, it is not relevant to a claim that jail staff somehow routinely mishandled the plaintiff's inmate grievances. The "production of only a scintilla

12

of evidence . . . is insufficient to defeat a summary judgment motion." Black Agents & Brokers Agency Inc. v. Near North Ins. Brokerage, Inc., 409 F.3d 833, 836 (7th Cir. 2005) (citing Anderson, 477 U.S. at 252). The plaintiff has not demonstrated that the grievance procedures were unavailable to him.

Nor has the plaintiff demonstrated that the five grievances in the record show he exhausted his administrative remedies. Two of the grievances—the August 27, 2017 grievance and the February 2, 2018 grievance—do not address the claims at issue. In this case, the plaintiff is suing the defendants because he claims they failed to address his sinus issues and failed to replace or sanitize his CPAP replacement parts. Dkt. No. 1 at 2-3. The August 27, 2017 grievance concerns a jail staff member, Mr. Guadalupe, who is not a defendant, and the allegedly offensive comments he made to the plaintiff. Dkt. No. 68-9. The February 2, 2018 grievance concerns unopened mail. These grievances are not relevant to the case at hand and do not demonstrate that the plaintiff exhausted his administrative remedies. Dkt. No. 68-6. Even if they were relevant, there is no dispute that the plaintiff did not appeal the disposition of the grievances as required by the jail grievance procedures, which is necessary to exhaust administrative remedies. See Pozo, 286 F.3d at 1025.

The September 15, 2017 grievance, the December 7, 2017 grievance and the January 23, 2018 grievance are more relevant, but do not demonstrate the plaintiff exhausted his administrative remedies. While the plaintiff complained in the September 15, 2017 grievance that he could not get distilled water for

13

his CPAP machine and that he did not have access to his personal medication—arguably addressing the allegations in his complaint—it is undisputed that the plaintiff did not appeal the disposition of that grievance. Dkt. No. 90 at ¶12(b). The December 7 grievance at least mentions that the plaintiff felt jail medical staff were ignoring his sinus issues, but again, it is undisputed he did not appeal. Id. at ¶12(c).

The plaintiff *did* appeal the disposition of the January 23, 2018 grievance. Id. at ¶12(d). While the grievance does complain about issues with the plaintiff's CPAP machine, the issues about which he complained in the grievance are different than the issues about which he complains in this lawsuit. In the grievance, the plaintiff complained about an isolated incident where, on his way back to his dorm, he went to pick up his CPAP machine and noticed that the storage bag for his CPAP was missing. Dkt. No. 68-7 at 2. The complaint in this case alleges that for a period of seven months, the defendants habitually refused to provide the plaintiff with replacement parts, equipment for sanitizing his CPAP or other maintenance requirements for his CPAP, implying that their refusal affected the functionality of his CPAP. Dkt. No. 1 at 2-3.

One of the central purposes of the exhaustion requirement is to put institutions on notice to attempt to informally resolve issues. See Dye v. Bartow, No. 06-c-0634, 2007 WL 3306771 at *5 (E.D. Wis. Nov. 6, 2007) (holding that the rationale for the exhaustion requirement "is to allow prison

14

officials time and opportunity to respond to complaints internally before an inmate initiates litigation.") The isolated incident complained of in the January 23, 2018 grievance does not give the jail staff notice that the plaintiff was repeatedly denied materials he needed to keep the CPAP machine functioning. The grievance concerns a piece of equipment—the carrying case—that is not essential for the CPAP machine to function. The January 23, 2018 grievance does not demonstrate that the plaintiff exhausted his administrative remedies.

The plaintiff did not demonstrate that the grievance process was unavailable to him, nor do the grievances in the record show he exhausted his administrative remedies. Because the plaintiff did not exhaust his administrative remedies, this court does not have jurisdiction to decide the substantive issues, must grant summary judgment in favor of the defendants and must dismiss the case.

### III. CONCLUSION

The court **GRANTS** the motion for summary judgment filed by defendants Gilanyi, Keeku and Swenson. Dkt. No. 65.

The court **GRANTS** the motion for summary judgment filed by defendant Durrani. Dkt. No. 78.

The court **DISMISSES** this case and will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment.

See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 1st day of June, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**